Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| WILLIAM I. TORRES ROSARIO<br><br>Recurrido<br><br>v.<br><br>LABORATORIO CLÍNICO M. LANDRÓN, INC., H/N/C LABORATORIO CLÍNICO DE REFERENCIA M. LADRÓN, INC., CARLOS A. GONZÁLEZ AYALA Y MARÍA PÉREZ VERA<br><br>Peticionario | KLCE202301117 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. VB2020CV00382<br><br>Sobre: Despido Injustificado (Ley Núm. 80) y otros |

Panel integrado por su presidente el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

## SENTENCIA EN RECONSIDERACIÓN

En San Juan, Puerto Rico, a 14 de marzo de 2024.

Examinada la *Moción de Reconsideración* presentada el 13 de febrero de 2024, por la parte recurrida William I. Torres Rosario, así como la *Moción en Cumplimiento de Orden y para que se Deniegue de Plano la Moción de Reconsideración por Falta de Notificación Dentro del Término Requerido y Oposición a Moción de Reconsideración* presentada el 26 de febrero de 2024, por la parte peticionaria Laboratorio Clínico M. Landrón, y la réplica a esta sometida al día siguiente por el recurrido, declaramos Ha Lugar la primera. Por tanto, emitimos la presente *Sentencia en Reconsideración*, a los únicos fines de modificar lo resuelto en cuanto al sexto error señalado.

A continuación, exponemos nuevamente los hechos pertinentes a la controversia ante nuestra consideración y los fundamentos a nuestro dictamen. Veamos.

**I**

El 2 de septiembre de 2020, el Sr. William I. Torres Rosario presentó *Querella* ante el Tribunal de Primera Instancia contra el Laboratorio Clínico M. Landrón Inc. (Laboratorio Landrón), el Sr. Carlos A. González Ayala y la

Número Identificador

SEN2024_____

Sra. María Pérez Vera[1]. Alegó haber sido despedido injustificadamente, según la Ley Núm. 80-1976.[2] Además, se amparó en la protección contra despidos por represalias, codificada en la Ley Núm. 115-1991[3].

En su *Querella*, sostuvo que el 26 de marzo de 2020, se le entregó una mascarilla especial para entrenamiento físico marca *Vikingstrength Fitness*, con el propósito de sustituir las mascarillas desechables que se utilizaban en el trabajo para la prevención del virus del COVID-19. Tras recibir la nueva mascarilla, alegó que el 1 de abril de 2020, presentó una queja ante el Sr. Salomón Rodríguez quien estaba encargado de proveer dicho equipo. Expresó que, el señor Rodríguez reaccionó de una forma violenta, ocasionándole daños y angustias mentales que no le permitieron presentarse a trabajar al día siguiente.

Sostuvo que, tras haberse ausentado, el 2 de abril del 2020, recibió una *carta* del Sr. Carlos A. González, el vicepresidente del Laboratorio Landrón, notificándole que había sido suspendido indefinidamente de su puesto por la confrontación que había surgido. Adicionalmente, expresó que el señor González le solicitó pruebas especializada,[4] como evidencia médica, tras haber indicado que se encontraba indispuesto para presentarse al trabajo.

Posteriormente, el 15 de octubre de 2020, el Laboratorio Landrón compareció y en esencia argumentó que, el señor Torres Rosario actuó de forma insubordinada y agresiva, alterando la paz del ambiente laboral en violación al reglamento y a las normas del Laboratorio Landrón. Además, expresó que no se habían tomado represalias contra el señor Torres Rosario, sino que, por el contrario, la misiva le notificaba que se evaluaría legalmente sus actuaciones. Sobre las pruebas médicas solicitadas, arguyó que se trataba de una medida cautelar y en protección de los

---

[1] El señor González Ayala y la señora Pérez Vera fueron demandados en su carácter personal. El señor González Ayala es el vicepresidente, administrador y co-dueño de la corporación querellada. Por su parte, la señora Pérez Vera es la presidenta y co-dueña de la corporación querellada.

[2] Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185 *et seq.*

[3] Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194a *et seq.*

[4] Le fue solicitado una evaluación médica que incluyera pruebas de Influenza, Mycoplasma y COVID-19.

empleados por la emergencia del COVID-19, al haber expresado que estaba indispuesto.

Tras varias incidencias procesales, el 10 de febrero de 2023, el Laboratorio Landrón presentó *Moción de Sentencia Sumaria Parcial sobre Alegada Represalia*. Arguyó que, no se configuraban los elementos sobre la reclamación al amparo de la Ley Núm. 115-1991, por lo que procedía su desestimación. Específicamente, expresó que, el acto de desaprobar una mascarilla provista por un patrono y solicitar una de otro tipo, no constituye una actividad protegida bajo la Ley Núm. 115-1991.

Por su parte, el 14 de marzo de 2023, el señor Torres Rosario presentó *Moción en Oposición a Sentencia Sumaria y en Solicitud de Sentencia Sumaria*. Planteó que, las acciones de su patrono constituían una clara y patente muestra de represalia. Ello, debido a que fue suspendido indefinidamente por haberse quejado de las condiciones laborales, en cuanto a las mascarillas provistas.

El 6 de mayo de 2023, el Laboratorio Landrón sometió una *Réplica a "Moción en Oposición a Sentencia Sumaria" y Oposición a Solicitud de Sentencia Sumaria.* Sostuvo que no existía controversia real sobre los hechos materiales relacionados a la entrega de la mascarilla. Ello así, argumentó, que el Foro primario solamente debía evaluar si el acto del señor Torres Rosario el 1 de abril de 2020, de solicitarle al señor Rodríguez otra mascarilla por no estar de acuerdo con la brindada, constituía una actividad protegida al amparo de la Ley Núm. 115-1991.

El 13 de mayo de 2023, notificada el 15, el Tribunal de Primera Instancia emitió *Resolución* declarando "No Ha Lugar" la dos (2) Solicitudes de Sentencia Sumaria. Concluyó que, a base de la prueba presentada hasta ese momento, no estaba en posición de resolver si el despido del señor Torres Rosario fue injustificado y si hubo represalias por la queja relacionada a la mascarilla.

En dicha *Resolución*, el Foro primario estableció los siguientes hechos como probados:

1. Landrón es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, registro número 51954.
2. Landrón se dedica a ofrecer servicios de pruebas de laboratorios, en Vega Baja y San Juan, así como servicios de referencia a otros laboratorios de Puerto Rico.
3. Para el 1 de abril de 2020, la Sra. María Pérez Veras era la presidenta y una de las accionistas de Landrón, siendo el otro accionista el señor González Ayala.
4. El señor Torres comenzó a trabajar en Landrón como empleado regular, en octubre de 2009.
5. Durante su tiempo trabajando en Landrón, el querellante fungió en el puesto de "Carrero". Este puesto consistía en dar servicio recorriendo toda la isla de Puerto Rico, recogiendo y entregando muestras de pruebas clínicas, en diferentes laboratorios de la isla, a diversos laboratorios, CDTs y hospitales.
6. Para el 1 de abril de 2020, el señor Torres se desempeñaba como mensajero (carrero), en Landrón, siendo sus funciones recoger muestras tomadas en distintas facilidades de laboratorios que eran clientes de Landrón.
7. Para marzo y abril de 2020, el Sr. Salomón Rodríguez era el "Comptroller" de Landrón.
8. El 1 de abril de 2020 el querellante le solicitó al Sr. Salomón Rodríguez una mascarilla "de tela desechable de protección fácil, como se le había provisto anteriormente" y expresó que la mascarilla marca "Vikingstrength" que Landrón le había provisto "no lo dejaba respirar".
9. El 1 de abril de 2020, luego de solicitar al Sr. Salomón Rodríguez mascarilla "de tela desechable de protección facial, como se le había provisto anteriormente" y expresar que la "Vikingstrength" no lo dejaba respirar, el señor Torres Rosario se dirigió a la oficina de la entonces presidenta de Landrón, María Pérez y se reunió con ella.
10. La investigación sobre lo ocurrido entre el señor William Torres y el Sr. Salomón Rodríguez duró menos de un día y solo se habló con él y se tomó en cuenta la versión del Sr. Salomón Rodríguez.
11. El 2 de abril de 2020, el señor Torres envió un mensaje por la aplicación WhatsApp a su supervisor el señor Marrero que lee "estoy indispuesto…", sin informar la razón de su indisposición.
12. El 2 de abril de 2020, el Sr. Jonathan Marrero contestó el mensaje de WhatsApp del Querellante, expresando "[b]uenos días!! ¡Me dejas saber por la tarde como sigues!"
13. El 2 de abril de 2020, el Sr. Jonathan Marrero le notificó la carta firmada por el señor González Ayala al señor Torres, suspendiéndolo de empleo y sueldo de manera indefinida. En dicha carta se reconoció que el señor Torres se quejó de que el equipo entregado no era el querido para la protección contra el Covid-19.
14. En dicha carta se le señaló al señor Torres que debido a que él solicitaba una mascarilla adecuada para trabajar, este debía presentar una prueba de Covid-19, Influenza y Micoplasma.
15. El último día que trabajó el señor Torres en Landrón fue el 1 de abril de 2020.
16. Landrón entregó al querellante el Manual de Políticas y Procedimientos de Empleados.

17. Posterior a la fecha de la presentación de la presente demanda y la contestación de la misma, se liquidaron las vacaciones y Bono de Navidad del señor Torres.

De igual forma, identificó los siguientes hechos en controversia:

1. Las razones por las cuales se despidió al señor Torres.
2. Si hubo represalias en contra del señor Torres, por este quejarse sobre las mascarillas.
3. ¿Qué ocurrió entre el señor Torres y el señor Rodríguez, el 1 de abril de 2020?
4. Si Landrón llevó a cabo una investigación adecuada para determinar si procedía el despido del querellante.

El 30 de mayo de 2023, el señor Torres Rosario radicó una *Moción de Reconsideración Solicitando Determinación de Hechos Adicionales no Controvertidos*. Por su parte, el 30 de junio de 2023, el Laboratorio Landrón presentó *Oposición a "Moción de Reconsideración Solicitando Determinación de Hechos Adicionales No Controvertidos"*. Argumentó que de la *Querella* y del expediente no surgía una causa de acción bajo la protección contra represalias de la Ley Núm. 115-1991.

El 7 de julio de 2023, el señor Torres Rosario radicó una *Moción Urgente en Solicitud de Desglose de Moción y Desglose de Evidencia Presentada en Oposición a "Moción de Reconsideración Solicitando Determinación de Hechos Adicionales No Controvertidos"*. Luego, el 27 de julio de 2023 el Laboratorio Landrón se opuso a la misma mediante *Oposición a "Moción Urgente en Solicitud de Desglose"*. Evaluadas las mociones, el 6 de septiembre de 2023, notificada el 7, el Foro primario emitió *Resolución* declarando "No Ha Lugar" la solicitud de reconsideración.

Insatisfecho, el 10 de octubre de 2023, el Laboratorio Landrón acudió ante nos mediante *Petición de Certiorari*. Sostiene que el Foro primario cometió los siguientes errores:

**PRIMER ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRECIÓN, PERJUICIO Y ERROR MANIFIESTO, AL DECLARAR SIN LUGAR LA MOCIÓN DE SENTENCIA SUMARIA DE LA PETICIONARIA, DETERMINANDO QUE EL QUEJARSE DEL TIPO DE MASCARA PROVISTA POR EL PATRONO ES UNA ACTIVIDAD PROTEGIDA BAJO LA LEY 115 SOBRE REPRESALIA.

**SEGUNDO ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRECIÓN, PERJUICIO Y ERROR MANIFIESTO, AL NO INCLUIR EN LA RESOLUCIÓN RECURRIDA COMO HECHOS ADMITIDOS LOS HECHOS NÚM. 2, 11, 12, 13, 14, 15, 16, 21, DE LA MOCIÓN DE SENTENCIA SUMARIA DE LA PETICIONARIA, NO CONTROVERTIDOS POR EL RECURRIDO.

**TERCER ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRECIÓN, PERJUICIO Y ERROR MANIFIESTO, AL DETERMINAR EN LA RESOLUCIÓN RECURRIDA QUE EL RECURRIDO PRESENTÓ UNA QUEJA ANTE EL SR. RODRÍGUEZ SOBRE LA MASCARA PROVISTA.

**CUARTO ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRESCIÓN, PERJUICIO Y ERROR MANIFIESTO, AL INCLUIR COMO HECHOS PROBADOS EN EL PÁRRAFO 5 DE LA RESOLUCIÓN RECURRIDA QUE EL RECURRIDO RECOGÍA Y ENTREGABA MUESTRAS DE PRUEBAS CLÍNICAS EN "CDTs Y HOSPITALES".

**QUINTO ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRECIÓN, PERJUICIO Y ERROR MANIFIESTO, AL INCLUIR COMO HECHOS PROBADOS LOS LISTADOS EN EL PÁRRAFO 10 DE LA RESOLUCIÓN RECURRIDA.

**SEXTO ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRECIÓN, PERJUICIO Y ERROR MANIFIESTO, AL INCLUIR COMO HECHOS PROBADOS LA SEGUNDA ORACIÓN DEL PÁRRAFO 13 DE LA RESOLUCIÓN RECURRIDA.

**SÉPTIMO ERROR**

ERRÓ EL TPI, INCURRIÓ EN CRASO ABUSO DE DISCRECIÓN, PERJUICIO Y ERROR MANIFIESTO, AL NO INCLUIR LA PALABRA "TAMBIEN" EN EL HECHO NÚMERO 8 DE LA RESOLUCIÓN RECURRIDA, SEGÚN EXPUESTO EN EL HECHO NÚMERO 9 DE LA MOCIÓN DE SENTENCIA SUMARIA DE LA PETICIONARIA.

El 12 de octubre de 2023, concedimos término de veinte (20) días al señor Torres Rosario para que se expresara en torno al recurso. A esos efectos, el 2 de noviembre de 2023, el señor Torres Rosario compareció mediante *Alegato en Oposición a Recurso de Certiorari*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

El mecanismo de sentencia sumaria provisto por la Regla 36 de Procedimiento Civil, permite la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, es decir, de aquellos hechos que puedan afectar el resultado de la reclamación bajo el derecho sustantivo aplicable.[5] De manera que, cuando los documentos no controvertidos que acompañan la moción de sentencia sumaria demuestran que no hay una controversia de hechos esenciales y pertinentes, se prescinde de la celebración de un juicio y por lo tanto, únicamente resta aplicar el Derecho.[6]

Para prevalecer por la vía sumaria, la parte promovente deberá presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[7] Con ese fin, deberá desglosar los hechos que alega no están en controversia con referencia específica a la prueba admisible y sustancial que lo sustenta.[8] Por el contrario, ante una solicitud de sentencia sumaria el promovido no deberá tomar una actitud pasiva ni descansar solamente en sus alegaciones. Este debe controvertir la prueba presentada por el promovente, mediante contestación detallada y específica sobre aquellos hechos pertinentes acompañada de prueba admisible, y así demostrar que existe una controversia real y sustancial que debe dilucidarse en un juicio.[9]

Si el promovido se cruza de brazos, se expone a que dicten sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo.[10] Ahora bien, si el promovido no contraviene la prueba presentada en la solicitud de sentencia sumaria, no necesariamente significará que

---

[5] 32 LPRA Ap. V, R. 36; SLG *Fernández-Bernal* v. *RAD-MAN San Juan*, 208 DPR 310 (2021); *Roldán Flores* v. *M. Cuebas* et al*.,* 199 DPR 664 (2018); *Bobé* et al. v. *UBS Financial Services*, 198 DPR 6 (2017).
[6] *Rosado Reyes* v. *Global Healthcare*, 205 DPR 796 (2020); *León Torres* v. *Rivera Lebrón*, 204 DPR 20 (2020); *Meléndez González* et al. v. *M. Cuebas*, 193 DPR 100 (2015).
[7] *Ramos Pérez* v. *Univisión*, 178 DPR 200 (2010).
[8] *León*, 204 DPR, págs. 41-42; *Roldán*, 199 DPR, pág. 676.
[9] *Abrams Rivera* v. *ELA*, 178 DPR 914, 933 (2010); *Piovanetti* v. *S.L.G. Touma, S.L.G. Tirado*, 178 DPR 745, 774 (2010).
[10] *León*, 204 DPR, págs. 41-42.

procede automáticamente la concesión de la sentencia.[11] Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en Derecho.[12] Es decir, se debe cumplir con el criterio rector de que los hechos incontrovertidos y la evidencia de autos demuestren que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente.[13]

Un hecho material esencial es aquel que podría afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.[14] Al atender la petición, los tribunales considerarán las alegaciones, las deposiciones, las contestaciones a los interrogatorios y las admisiones ofrecidas, en unión a las declaraciones juradas que se produzcan. Pueden considerar todos los documentos en el expediente, por lo que no tienen que limitarse a los hechos o a los documentos que se produzcan en la solicitud.[15]

Al considerar la solicitud, se deben asumir como ciertos los hechos no controvertidos que se encuentran sustentados por los documentos que presenta el promovente.[16] La inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede el dictamen sumario si bajo ningún supuesto de hechos prevalece el promovido.[17] La parte que se oponga deberá demostrar que existe una controversia de hechos y, como regla general, deberá presentar las contradeclaraciones y los documentos que refuten los del promovente.[18] Es importante que la controversia sea real, la parte promovida no puede descansar en sus alegaciones o meras afirmaciones.[19] "*Cualquier duda es insuficiente para derrotar una solicitud*

---

[11] *Piovanetti,* 178 DPR, pág. 174.

[12] *Rosado,* 205 DPR, págs. 808-809; *Audiovisual Lang.* v. *Sist. Est. Natal Hnos.*, 144 DPR 563 (1997).

[13] *Rosado*, 205 DPR, pág. 809.

[14] *S.L.G. Szendrey-Ramos*, 184 DPR, pág. 167.

[15] Véase, *SLG Zapata-Rivera*, 189 DPR, pág. 433; *Const. José Carro* v. *Mun. Dorado*, 186 DPR 113, 130 (2012).

[16] *E.L.A.* v. *Cole*, 164 DPR 608, 626 (2005).

[17] *Íd.*, pág. 625.

[18] *Íd.*

[19] Véase, *Meléndez*, 193 DPR, pág. 110; *Rodríguez Méndez* v. *Laser Eye,* 195 DPR 769, 785 (2016).

*de Sentencia Sumaria*".[20] No obstante, la parte contra la que se solicite el mecanismo sumario no debe cruzarse de brazos, pues se expone a que se acoja la solicitud y se resuelva en su contra.[21]

**B**

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento".[22] Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiese, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica".[23]

El revisar sentencias dictadas por el Tribunal de Primera Instancia a través del mecanismo de sentencia sumaria, o las resoluciones denegatorias de las mismas, el Tribunal de Apelaciones se encuentra en la misma posición que el tribunal de instancia para evaluar su procedencia.[24] Al disponer de una moción de sentencia sumaria, el tribunal necesariamente tendrá que inquirir las alegaciones de la demanda o las defensas interpuestas para determinar si existen hechos en controversia que deben esclarecerse mediante un juicio.[25] Los criterios para seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por el Tribunal Supremo.[26] Son:

1. Examinar de ***novo*** el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;
2. Revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36.

---

[20] *Meléndez*, 193 DPR, pág. 110.
[21] *Ramos*, 178 DPR, págs. 214-215.
[22] 32 LPRA Ap. V, R.1; *González Santiago* v. *Baxter Healthcare*, 202 DPR 281, 290 (2019); *Roldán*, 199 DPR, pág. 676; *Rodríguez Méndez et al.* v. *Laser Eye*, 195 DPR, pág. 785; *Oriental Bank* v. *Perapi et al.*, 192 DPR 7, 25 (2014).
[23] Regla 36 de Procedimiento Civil, 32 LPRA Ap. V. R. 36; *González,* 202 DPR, pág. 291; *Lugo Montalvo* v. *Sol Meliá Vacation*, 194 DPR 209, 225 (2015), *SLG Zapata-Rivera*,189 DPR, pág. 430.
[24] *Meléndez*, 193 DPR, pág. 137.
[25] *León* 204 DPR, pág 42.
[26] *Íd.*

3. Revisar si en realidad existen **hechos materiales en controversia** y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuales hechos materiales encontró que están en controversia y cuales están incontrovertidos;

4. Y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en controversia.

Además, al revisar la determinación del Tribunal de Primera Instancia respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia y; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[27] El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuando a los hechos materiales, pero no puede adjudicarlos.[28] También, se ha aclarado que al foro apelativo le es vedado adjudicar hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia.[29]

### III

Luego de un estudio del expediente colegimos que los siguientes hechos quedaron debidamente establecidos:

1. El señor Torres Rosario presentó su *Querella* el 2 de septiembre de 2020.
2. La *Querella* radicada el 2 de septiembre de 2020, no ha sido enmendada.
3. El Laboratorio Clínico M. Landrón Inc., es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, registro número 51954.
4. El Laboratorio Landrón se dedica a ofrecer servicios de pruebas de laboratorios en Vega Baja y San Juan, así como los servicios de referencia a otros laboratorios de Puerto Rico.
5. Al 1 de abril de 2020, la señora Pérez Veras era la Presidenta y una de las accionistas del Laboratorio Landrón siendo el otro accionista el señor González Ayala.
6. Al 1 de abril de 2020, el señor Torres Rosario se desempeñaba como mensajero (carrero) en el Laboratorio

---

[27] 193 DPR 100 (2015).
[28] *Íd.*, pág 115.
[29] *Vera* v. *Bravo*, 161 DPR 308, 335 (2004).

Landrón, siendo sus funciones recoger muestras tomadas en distintas facilidades de laboratorio que eran clientes del Laboratorio Landrón.

7. Para marzo y abril de 2020, el señor Rodríguez era el *"comptroller"* del Laboratorio Landrón.

8. El 1 de abril de 2020, el señor Torres Rosario le solicitó al señor Rodríguez una mascarilla "de tela desechable de protección facial, como se le había provisto anteriormente" y expresó que la máscara marca *Vikingstrength* que el Laboratorio Ladrón le había provisto no lo dejaba respirar.

9. El 1 de abril de 2020, luego de solicitar al señor Rodríguez mascarilla "de tela desechable de protección facial, como se le había provisto anteriormente" y expresar que la *Vikingstrength* no lo dejaba respirar, el señor Torres Rosario se dirigió a la oficina de la entonces presidenta del Laboratorio Landrón, la señora Pérez Vera y se reunió con ella.

10. En la reunión del señor Torres Rosario con la señora Pérez Vera el 1 de abril de 2020, el señor Torres no se quejó de situación laboral alguna.

11. El 2 de abril de 2020, el señor Torres Rosario le envió un mensaje por *WhatsApp* a su supervisor el señor Marrero que lee "estoy indispuesto…", sin informar la razón de su indisposición.

12. El 2 de abril de 2020, el señor Marrero contestó el mensaje de *Whatsapp* del señor Torres Rosario de la siguiente forma: "Buenos días!! Me dejas saber por la tarde como sigues!".

13. La determinación de suspensión indefinida al señor Torres Rosario se redujo a escrito por el señor González Ayala mediante carta el 2 de abril de 2020.

14. En la *Carta de Suspensión Indefinida* no se expone que el señor Torres Rosario se quejó del equipo entregado por el Laboratorio Landrón por entender que el mismo no era el requerido para la protección contra el Covid-19.

15. Para la fecha del 1 de abril de 2020, no era obligatorio que los patronos brindaran mascarillas a sus empleados en Puerto Rico.

16. Al señor Torres Rosario no se le adeuda dinero en concepto de vacaciones y enfermedad.

17. El Laboratorio Landrón entregó al señor Torres Rosario el Manual de Políticas y Procedimientos de los empleados.

18. El último día de trabajo del señor Torres Rosario en Landrón fue el 1 de abril de 2020.

19. El 2 de abril de 2020, el señor Marrero le notificó la carta firmada al señor González Ayala.

Por otro lado, consideramos que del expediente se desprenden que

los siguientes hechos están en controversia:

1. ¿Qué ocurrió entre el señor Torres Rosario y el señor Rodríguez el 1 de abril de 202,0 luego de que el señor Torres Rosario expresara su malestar con las mascarillas provistas por el Laboratorio Landrón?

2. Si el Laboratorio Landrón realizó una investigación sobre el altercado entre el señor Torres Rosario y el señor Rodríguez y ¿cuáles fueron las determinaciones de dicha investigación?

3. La existencia de represalias en contra del señor Torres Rosario por este quejarse de las mascarillas provistas.

**IV**

En su primer señalamiento de error, el Laboratorio Landrón plantea que el Foro primario erró al declarar "No Ha Lugar" su *Moción de Sentencia Sumaria* determinando que el quejarse del tipo de máscara provista por el patrono es una actividad protegida bajo la Ley Núm. 115-1991 sobre represalias. No le asiste razón. Veamos.

Coincidimos con la premisa en la que el Foro *a quo* basó su *Resolución* para atender este asunto. "Lo que sí queda claro es que el señor Torres sí presentó una queja ante el señor Rodríguez, sobre la mascarilla, pues toda la prueba presentada por Landrón así lo acepta. El hecho de que esta crea o no que la queja presentada [es o] no una querella según la Ley Núm. 115-1991, resulta irrelevante, pues la ley y la jurisprudencia no ponen restricciones sobre el tipo de queja que se presenta y cómo se presenta, solo que la persona no sea discriminada o acosada por presentar una queja ante el patrono".

El Laboratorio Landrón señala, como segundo señalamiento de error, que el Foro primario erró al no incluir en su resolución los hechos 2, 11, 12, 13, 14, 15, 16 y 21 como admitidos. Luego de evaluar exhaustivamente el expediente, determinamos que le asiste razón en cuanto al hecho 2, 11,12, 14, 16, y 21.  En cuanto al hecho 13 y 15, no le asiste razón ya que son hechos que se encuentran en controversia y deben ser dilucidados por el Tribunal de Primera Instancia.

Como tercer señalamiento de error, el Laboratorio Landrón plantea que el Foro primario erró al determinar que el señor Torres Rosario presentó una queja ante el señor Rodríguez sobre la máscara provista. No tiene razón.

En el hecho incontrovertido número 11 presentado por el Laboratorio Landrón en su *Moción de Sentencia Sumaria* se establece que el 1 de abril de 2020, el señor Torres Rosario le solicitó al señor Rodríguez una mascarilla de tela desechable como la que se le había provisto anteriormente y le expresó que la marca "*Vikingstrength*" provista por

Laboratorio Landrón no lo dejaba respirar. Este hecho fue controvertido por el señor Torres Rosario, pero no sobre el hecho particular de la queja o expresión de insatisfacción sobre la mascarilla, sino sobre los hechos que ocurrieron justo después de expresar la queja. No hay duda de que el señor Torres Rosario le expresó insatisfacción al señor Rodríguez sobre la mascarilla, pero existe controversia en cuanto a la reacción de las partes luego de expresar esta insatisfacción.

Como cuarto señalamiento de error, el Laboratorio Landrón alega que el Foro primario incidió al incluir como hecho probado en la *Resolución,* que el señor Torres Rosario recogía y entregaba muestras de pruebas clínicas en CDTs y hospitales. Tiene razón.

Es meritorio indicar que no se estableció que el señor Torres Rosario recogía y entregaba muestras en CDTs y hospitales en la *Querella* que inicia este pleito. En la *Querella* el señor Torres Rosario se limitó a establecer que su puesto de carrero "consistía en dar servicio recorriendo toda la isla de Puerto Rico recogiendo y entregando muestras de pruebas clínicas en diferentes laboratorios de la isla". Luego, el señor Torres Rosario enmienda su *Querella* en la *Oposición a la Moción de Sentencia Sumaria* del Laboratorio Landrón para añadir que recogía y entregaba muestras en diversos laboratorios, CDTs y hospitales. Sin embargo, la *Declaración Jurada* que ofreció para probar este hecho no es suficiente.

Como quinto señalamiento de error, el Laboratorio Landrón plantea que el Foro primario erró al incluir como hecho probado el párrafo número 10 de la *Resolución*. Refiere a que el Tribunal de Primera Instancia estableció como hecho incontrovertido que la investigación sobre lo ocurrido entre el señor Torres y el señor Rodríguez **duró menos de un día y solo se habló con él y tomó en cuenta la versión del señor Rodríguez**. Le asiste razón.

De una evaluación exhaustiva del expediente observamos que existe controversia en cuanto al proceso de investigación que llevó a cabo el Laboratorio Landrón. En ninguna etapa de los procedimientos se le ha

provisto al Tribunal de Primera Instancia el procedimiento de investigación llevado a cabo por el Laboratorio Landrón en este caso, ni los criterios de investigación de este. Por lo tanto, el hecho establecido en el párrafo número 10 es uno que se encuentra en controversia.

Como sexto señalamiento de error el Laboratorio Landrón alega que el Foro primario erró al incluir como hechos probados la segunda oración del párrafo 13 de la *Resolución*. En síntesis, esta segunda oración establece que en la *Carta de Suspensión* emitida por el Laboratorio Landrón reconoce que el señor Torres Rosario se quejó que el equipo entregado no era el requerido para la protección contra el Covid-19. De una lectura de la misiva que forma parte del expediente se puede apreciar que, si bien no se utilizó la palabra "queja", la parte peticionaria afirmó que el recurrido había "alegado" que no se le estaba proveyendo el equipo necesario para su protección, lo cual claramente constituye una queja. Por lo tanto, el error señalado no se cometió.

Finalmente, prescindimos de atender el séptimo señalamiento de error por entender que el error sugerido no solo carece de mérito para demostrar que el foro primario abusó de su discreción, actuó con perjuicio, o incidió en un error manifiesto, sino que la inclusión de la palabra "también" no cambia el hecho estipulado que fue probado.

**V**

Por los fundamentos que anteceden, *expedimos* el auto de *Certiorari, modificamos* el dictamen con el fin de incluir los hechos controvertidos y los hechos no incontrovertidos entre las partes. Así *modificada*, se *confirma* la decisión recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones